All right, our last case this morning is number 19-13690, Travelers Property Casualty Company v. Ocean Reef Charters. Mr. Hassebrock, whenever you're ready. Thank you, Your Honor. Can everyone hear me okay? Yes, we can. Thank you. I apologize. This is Ben Hassebrock on behalf of Appellant Ocean Reef Charters. I had some technical difficulties with my phone earlier. So I apologize to the court if that caused any of the difficulties today. May it please the court. We submit that this court should reverse based on longstanding controlling precedent from the U.S. Supreme Court in the Wilburn Boat decision. That case gives us a clear straightforward rule to determine what law governs marine insurance warranties. And Wilburn Boat held that state law applies unless the specific warranty at issue is subject to a firmly entrenched rule of admiralty law. Now, historically... Well, Mr. Hassebrock, you say that, but, you know, Wilburn Boat has, I think, according to a lot of courts and a lot of admiralty commentators, been very, very confusing was it meant to apply to maritime warranties in general? Are you supposed to look at the specific warranty in question? And different circuits have taken different approaches as to how to interpret Wilburn Boat. Is it an outlier? Is it narrowly conscribed to its facts? So I'm not... For my purposes, I mean, I wrote about this when I was on the district court. I have a perspective on it that my colleagues may not share, but Wilburn Boat is not all that clear to me. Certainly, Your Honor. In 65 years, there's bound to be some discussion and some dicta and some confusion about the law. And I'm not here to say that that doesn't exist, but I believe your is correct and got it correct. I mean, there's a significant analysis there where you trace the law from Wilburn Boat and the lineage thereafter and reach the correct result, which is that we look at the specific warranty at issue and determine whether it's firmly entrenched. This is squarely within Wilburn Boat. This isn't one of the cases that involves something other than a marine insurance warranty. That's exactly what Wilburn Boat was speaking to, and that's exactly what this case is. And so historically, there have been a couple of warranties, specifically navigational limits warranties and seaworthiness warranties, which are ubiquitous. They're in every marine insurance contract. Those are firmly entrenched, but they're really the only two. The captain and crew warranties that are issued at issue in this case are not firmly entrenched, and no case that's been cited to this court has ever reached that level. Our cases of Lexington and Hilton Oil are not expressed. There's nothing in those cases that expressly limits them to the navigational and trade limit warranties. They have very broad language talking about strict construction of express warranties in the marine insurance contracts, right? So the point you're making is a little different from what the cases say. Well, they do speak broadly, but they also don't say anywhere that they are overruling Wilburn Boat or abrogating Wilburn Boat. In fact, I don't believe Cook even mentioned it, and Hilton Oil mentioned it in passing. So Cook is dealing with a navigational warranty, and that is the warranty that's firmly entrenched. That result is not surprising. There's no reason to expand that beyond navigational warranties when it wasn't considering anything other than that. And Hilton Oil actually doesn't ultimately deal with the breach of warranty at all. It's dicta to the extent that it makes a broad statement. It's dealing with a held covered clause, which appears in that policy. So I would suggest that the district court here has held that the 11th Circuit has already abrogated Wilburn Boat by implication, and that's not really a plausible reading. Wilburn Boat itself, reading the opinion, it instructs that the judiciary should not create these rules. These are policy decisions that are met for legislatures, and either Congress should step in or the states can handle it. And it's a very clear pronouncement there. We quoted it at length in our brief. It even went so far to say that the rule of strict compliance that's been And both the majority and the dissent seem to prefer the state approach of the anti-technical statute that we're dealing with in Florida. These cases that create confusion, they generally are not comparing an anti-technical statute at the state level with admiralty law. They're generally in a state that don't have... They're either dealing with those specific navigational seaworthiness warranties, or they're in a state where there is no anti-technical statute to be And therefore, the predominant rule would be strict compliance. I would also point out to the court that this emanates from English law, and English admiralty law has changed. In the United Kingdom in 2015, they abandoned the rule of strict compliance and issued a causation rule that mirrors the anti-technical statute. So I think Wilburn Boat was correct. I think Rosen was absolutely correct in its application. I think it was a prescient ruling that the draconian rule of strict compliance is unfair and improper, and that we don't like it, we don't want to use it. And looking to the future, that's exactly what's happened. So... Mr. Hassebrock, can I ask you one of the... A question that was presented, although certainly not decided in a way that's adverse to you and Wilburn Boat, and that is the question of whether or not, in a given case, a federal court should create a general federal rule establishing strict compliance with a certain warranty. Why should we not do that here? Well, your honor, I believe that it needed to be entrenched at the time, and so we can't create a same decision. There's got to be a prime mover, and if we don't have an entrenched rule that applies to these warranties, then we really can't create one, is what Wilburn Boat is saying. We apply it the law as it is. And of course... Two minutes, counsel. Counsel, two minutes. Thank you. And of course, the preference was to defer to the state legislature, and there's direction from Wilburn Boat that they don't like the strict compliance rule across the board. But practically speaking, what I would say to that, your honor, is we don't want a rule of strict compliance for captain and crew warranties. These are not the same thing as navigational limit or seaworthiness warranties. They don't appear in every marine insurance contract. And if you're sitting in Florida three days out from a hurricane, and your captain suddenly dies, or you have to foresee, you're technically in breach of the captain warranty. And that storm's going to hit, and your boat suffers a loss. Strict compliance says, you lose, you forfeit your coverage. That's an extremely draconian result. And if you set that rule, you really don't allow for an exception for fairness in those circumstances. So it would produce absurd results. And the better answer here, which I think Wilburn Boat alludes to, and which the Florida legislature has adopted, is the anti-technical statute. It's designed to prevent a forfeiture of coverage for a technicality. It wants causation linked between the breach of the warranty and the loss. And that is a fair rule, and it's the rule that should be applied here under Wilburn Boat. Counsel, can I ask you a practical question? If we were to agree with you that Florida law governs, first of all, do you concede that Ocean Reef was in breach of the warranties when the loss occurred? Well, there's a dispute as to the captain warranty. Ocean Reef attempted to rehire a previously approved captain, and did do so. They consulted with that captain about potentially securing the boat or moving it. There really was not any record evidence on the presence of a crew member. So that isn't brief to the court, but certainly the district court found that Ocean Reef was in breach of both. I mean, the district court ruled that way on the captain warranty as well, finding that the rehiring of a prior captain did not satisfy the warranty. So if we were to agree that Florida law governs and that there is a breach of warranties, what would we need to then continue on and decide whether the breach of the warranty increased the hazard by any means within the control of the insured under Florida law, or would we send that back to the district court? Well, I think that's a causation issue that would be a fact question for trial, but I will say this. We don't believe that travelers can prevail under Florida's anti-technical statute. It is undisputed, as far as I'm aware, that travelers have the burden to both plead and prove causation under 627-409 subsection 2. So they have not fled it. The only reason this is an issue in the case is because we fled it. It did not appear in their pleadings at all. It isn't properly raised before the court. That was their obligation. It fails on that basis alone. In addition, they cannot prove, they cannot meet their burden of proof in this case because they have no expert. They only disclosed a rebuttal expert, and so they have no expert witness to testify in their case in chief that there is a connection between the lack of a captain and the loss. Ocean Reef has an expert that says a captain couldn't have done anything differently to prevent this loss because Ocean Reef met the standard of a professional captain in securing the vessel prior to the loss. So Ocean Reef has certainly created a disputed issue of fact as to the causation element, but travelers have not fled it. They can't prove it. They have no expert for their case in chief, and we would say that they cannot prevail at all, and instruction should be given to enter judgment in Ocean Reef's favor. I believe I'm probably over my time, so I will stop at that point and turn it over. All right. Thank you very much, Mr. Hassebrock. You've reserved your time for rebuttal. Thank you. Mr. Conroy? Mr. Conroy? He might need to unmute his microphone. Mr. Conroy, if you could hit star six and see if you can unmute yourself. I am now unmuted. Good morning, everyone. This is Michael Conroy. Can you hear me? Yes. Thank you very much. All right. I'll be fairly brief, Your Honor. I know Judge Jordan is familiar with this issue from the Rosen case, but under Mr. Hasselbrock's view, nothing could ever become entrenched, yet the district judges and the 11th Circuit, in the two cases that the district judge, Ruiz, relied upon, those opinions had to themselves become entrenched, and so under Wilbur and Boe, state law would apply where there is no judicially established federal rule. So the district judge correctly looked to 11th Circuit case law and found two cases, and he applied those cases. So it's just a matter of... But those cases dealt with a different warranty. Why does the rationale apply here to a captain and crew warranty? Right. So the Supreme Court has never said that the type of warranties have to be identical. It is the rule of literal construction that people don't like warranties governing the breach of warranties, but the effect of a breach of a warranty should be enforced where they're important to the premium that the insurer's going to charge for a high-risk situation for size of a vessel, a captain, an owner with no experience, that type of thing. So I think there's room for development in the law. I don't think you necessarily have to automatically have an entrenched case and an entrenched principle of that type of warranty. I would also disagree with counsel when he said the case could just be reversed. The evidence in the case cited by the judge in his district court decision made it clear that they were in breach of the contract by not having the captain and having the crew. And Judge Ruiz is criticized because he didn't analyze this under state law as requested by the vessel owner here today. But I don't think there was any requirement that a dual analysis should have been done. I know, Judge Jordan, that you did that in the district court case that you decided. In the opinion, it said, and you said, in an abundance of caution, I will address Florida law as Ms. Rosen, the vessel owner therein, urges. And that was a declaratory judgment action. I don't know why, but you did do the walkthrough under Florida law. I don't think there's any requirement that a district court judge, if he applies federal admiralty law and he finds a warranty, that he has to automatically do a balancing test with the state anti-technical statute. And that's what happened in this case. We've set out in our brief at footnote 19, all of the reasons that the judge would have to find if the case were remanded. And on the same facts, I don't think that if the anti-technical statute were to apply, there's no way that Ocean Reef can argue that its breaches did not increase the hazard. So I think that's the position that we're in today. On, under your position, is every warranty in a maritime insurance contract strictly construed? I'm familiar with a lot of, a lot of warranties. Well, tell me one, tell me one warranty that under your view would not require strict compliance. Um, there are some lesser known warranties, but I don't, I can't think of one at the moment judge, but the cap named captain warranty is, and full full-time crew warranty, or those are major warranties that are issued by insurance companies as a risk control mechanism. But they don't exist in every case. I mean, what, what, what makes a specific warranty entrenched? What is the policy reason behind requiring strict compliance with a given warranty? Give me a test for doing that. Well, I think the test would be, um, you know, is the risk, is the risk of serious risk? You know, are we going to have someone operating a vessel that's unskilled? Is the vessel size, is this vessel owner buying a vessel who has no prior experience and going to be navigating it, you know, in an area that they have no operating experience? There could be a multi-factor test that evaluate the type of characteristics that, you know, the insurance company are, is evaluating the risk for before it issues a policy and issues a restrictive warranty to control that risk. But in this case, if you look at the facts of this case, at least in the light most favorable to Ocean Reef, it was the insurance company that really in a sense was responsible for the loss because it told through its agent, it told Ocean Reef that, eh, you probably shouldn't move the boat because you don't have a captain that satisfies the warranty. And then the boat sinks. Yeah, that was, that was actually the insurance agent. Um, and at that time the, they said, don't move, don't move the boat. Um, Ocean Reef's broker KPMG was trying to communicate with Holland Company and Holland Company's representative told, um, the vessel owner's broker, um, we haven't heard anything from travelers. So, um, you know, there's no agency there. And besides Judge, um, Mr, Mr. Golel had already had two prior insurance claims, both of which had been handled differently by the insurance company. He already knew that he didn't have a paid full-time captain. He already knew the vessel was someplace other than where he told the insurance company it was under the policy. So he has a responsibility as well for where he takes his, his, uh, takes his yacht and who he puts in charge of a 92 foot yacht. Mr. Mr. Conroy, this is Jill Pryor. I want to take you back to the, to the first issue again, if I may. Um, in our more recent case of Shackleford, uh, the holding of the court reference expressly referenced the navigational limit warranty, um, instead of using the broader language like had been in Cooks. And Ocean Reef makes the argument that that's significant and that the qualifier navigational wouldn't have been there if it, if that, if our court was interpreting Cooks as announcing a new rule that applies to all warranties. What's your response to that argument? Um, I don't know. I think the word analysis on that point, I think the thrust of the Shackleford case was, uh, on the choice of law provision, whether it can be construed as a choice of law provision. Okay. Anything else you want to add, Mr. Conroy? No, thank you. I think I may have gone over my time, but thank you very much for, uh, for hearing us today, your honors. No, thank you for, for the argument. We really appreciate it. Mr. Hasabrock, you've got your five minutes of rebuttal left. Thank you, your honor. Uh, I'd like to begin by just noting, uh, Judge Jordan, you mentioned the Ocean Reef was instructed not to move the vessel by traveler's agent and that's correct. Um, it was not the insurance agent that gave that instruction. Uh, it was the producer, in Florida, traveler's producer for this policy. They had an agency contract in place. There are admissions in the record, uh, on summary judgment that they served as traveler's agent and that's where the instruction came from. That was, that was my understanding of the record, at least, at least in the light most favorable to you. Yes. I mean, I, I believe the travelers may attempt to dispute that still, but certainly, um, you know, that the agency contract exists. Uh, so that is, that is our position on it. And, and, um, you know, with respect to that, the waiver and estoppel claims, they provide an independent basis for reversal, even if there was strict compliance, you know, even if there was a strict compliance rule in place. So, uh, the district court did not even mention this claim. There were factual issues there that would require a trial independently. I will rest on the briefs for that issue unless the court has any questions about it. Um, but, but I did want to point that out. Um, the other thing I wanted to point out is that travelers knew that the anti-technical statute, Florida statute applied to this, uh, policy. And, and there was a brief discussion about the prior claims. There was a 2016 lightning strike claim with this vessel. And at that time, uh, strictly speaking, uh, there was a breach of the captain warranty because, uh, Ocean Reef did not have a traveler's approved captain and travelers paid that claim. And in the claim notes, travelers says that the lack of the captain is not material to, um, you know, meaning that it did not have any causal relationship with the loss. So really, uh, they were looking at this issue and in testimony, uh, uh, travelers spoke to this to their, their corporate representative that they did look at, at this from an anti-technical statute perspective. So this admiralty law defense, I believe travelers really generated this for purposes of the litigation, uh, when they realized there was a total loss and a $2 million check to be written. I think that they knew from the outset that, that state law was in play. Um, the, uh, the captain warranty, um, that we've been discussing, you know, I would tie that to Rosin's named operator warranty. Rosin is directly on point here. Those, those warranties are almost identical. They serve the same purpose and, uh, Rosin holds, of course, that there is no entrenched rule as, as to the named operator warranty. The, the same results should apply here, uh, and, and warrants, uh, reversal. And, uh, you know, with that, uh, I think I'll, I'm willing to cede the rest of my time unless there are other I can answer for the court. No, thank you. Let me ask you one question with regard to the estoppel issue that you mentioned. I know you're relying on the briefs and I don't want to ask you a substantive question, but rather a procedural one. Was your claim below that you were entitled to judgment on the estoppel claim or that there were sufficient facts in the record to require a trial on that point? I believe that's a factual dispute for trial, Your Honor. Um, that's governed by Florida law. Uh, that's a clear, even in a maritime dispute, Shackleford, the 2019 opinion deals with, uh, waiver and estoppel claims under Florida law. There's also an older fifth circuit case reliance, uh, the, the escapade that finds estoppel. Uh, I believe there are grounds to, to find estoppel in this case, based on the instruction, but, um, certainly there's factual disputes surrounding that issue and the instructions that were given and travelers internal deliberations in response to that. So I believe that would likely be an issue for trial. All right. Thank you very much. Thank you both very much. We really appreciate the help. Thank you, Your Honor. Very good. Thank you, Your Honor. Okay. We are in recess for today's session and we will start back up tomorrow morning at nine o'clock. Bye-bye. Thank you. Bye-bye.